## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## DEL RIO DIVISION

| | | |
|---|---|---|
| ERIC ESTRADA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | CASE NO. 5:21-cv-00942 |
| | ) | |
| KICKAPOO TRADITIONAL TRIBE | ) | |
| OF TEXAS and DEPARTMENT OF | ) | |
| INDIAN CHILD WELFARE SERVICES | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

TO THE HONORABLE COURT:

COMES NOW ERIC ESTRADA, Plaintiff, and files this, his Original Complaint for Declaratory and Injunctive Relief,[1] and in support thereof, would respectfully show this Court the following:

### FACTS

1. This Complaint seeks a declaratory judgment as well as injunctive and other relief pursuant to 28 U.S.C. §§ 2201-2202 in connection with a filed by the Department of Indian Child Welfare Services ("ICWS") acting on behalf of the Kickapoo Traditional Tribe of Texas ("KTTT") removing a minor

---

[1] A separate Emergency Motion for a Temporary Restraining Order and Preliminary Injunction and Request for Entry of Order Without Necessity of a Hearing is being filed immediately after this complaint in accordance with Local Rule cv-65.

child, NAG, from her permanent home with her lifelong custodian Eric Estrada.

2. NAG was born to Tavanay Cirus Garza ("Tavanay"), a member of the KTTT, on February 2, 2020 and she did not list the father on the birth certificate. Four days later, Tavanay gave the child to her sister, Cindy Trevino Salazar ("Cindy") a Tribal member, and Cindy's husband, Eric Estrada ("Eric") a non-Tribal member because she could not care for the child. Cindy contacted the alleged father, Ivan Torres, Jr., also a non-Tribal member, who voluntarily submitted to a paternity test and agreed, along with the child's maternal grandmother to a guardianship by Cindy. Thus, on April 9, 2021 Cindy filed a Petition and Application for Appointment of a Permanent Guardian of Person and Estate of Minor, seeking to become NAG's permanent guardian. Tragically, Cindy passed away in mid-July of 2021 before the guardianship proceeding could be completed. Eric continued to care for NAG after Cindy passed. However,

3. On or about July 28, 2021 the ICWS Department unilaterally determined that NAG is a youth in need of care and forcibly removed her from her residence with her custodian, Eric Estrada. *See* Unsworn Declaration of Eric Estrada attached as Exhibit A. Then on August 2, 2021, the ICWS acting on behalf of the KTTT filed a Petition for Emergency Temporary Orders in the Tribal Court contending that the Tribal Court had jurisdiction over the case pursuant to the KTTT Indian Child Welfare Code Chapter 20, § 20.1(c) and

the Indian Child Welfare Act. The ICWS did not include either of the child's parents or Eric in this lawsuit in violation of the Texas Indian Child Welfare Code § 20.1(i).

4. The KTTT/ICWS contended falsely that NAG is a "youth in need of care," and that she was in an "unsafe environment and subject to harm or injury" if she was not assigned a court ordered guardian. Moreover, the fact that the child was residing with her custodian a non-Tribal member, which makes ICWA inapplicable, was completely ignored. The Tribe requested that KTTT ICWS be named NAG's Temporary Managing Conservator but placed in a foster home with Mr. Leroy Salazar and Ms. Ana Lee Garza. On August 4, 2021 the Tribal Court entered ex parte Emergency Temporary Orders finding that there was probable cause to believe the minor child was a youth in need of care and ordering that the child be placed in the care of Mr. Leroy Salazar and Ana Lee Garza.

5. On August 10, 2021 Eric Estrada filed a Petition in Intervention in the Tribal Court, contending that he had been the care taker and had actual physical possession of the child since she was born.  He requested to be appointed temporary sole managing conservator and a social study of the proposed caretakers requested by the KTTT. On September 15, 2021 the KTTT filed an answer to Eric's Petition in Intervention claiming that NAG was subject to ICWA and Eric has no entitlement whatsoever to her custody despite having cared for her since birth. However, Eric has spoken with both the

3

biological mother and the biological father of the child and both agree that NAG should be returned to Eric. *See* Unsworn Declaration of Eric Estrada attached as Exhibit A.

6. On September 9, 2021, Ivan Torres, Jr. ("Ivan"), the biological father, filed a First Amended Special Appearance and Original Answer in the Tribal Court case objecting to the Tribal Court's jurisdiction over the child and him because he is not a member of the KTTT and because the Tribal Court has no jurisdiction over the child under ICWA or the Tribal Code.

7. The child, NAG was forcibly removed from Eric's care and now ICWS/KTTT is considered her managing conservator. Her biological parents both agree NAG should be returned to Eric. NAG has suffered immensely emotionally from this intervention by the KTTT and the Tribal Court's rulings in its favor. NAG is in grave and imminent danger of immediate and continuing harm if she is not returned to the only person she has known as a father immediately. The Tribal court is holding a hearing on October 5, 2021 at 11:00 a.m. on the issues of who shall have custody and care of the child, the pending intervention by Eric, and Ivan's request for dismissal of the Tribal Lawsuit. Consequently, there is an immediate need for emergency temporary relief from this Court to 1) return the child to Eric Estrada and 2) stop the Tribal Court from exercising jurisdiction over non-Tribal members and imposing ICWA and the Indian

Child Welfare Code in a case where it they are simply not applicable whatsoever.

## SUMMARY OF RELIEF SOUGHT

1. Tribal court jurisdiction over non-Indians such as plaintiff is presumptively invalid, and the claims asserted in the Tribal Court Action do not fall within either of the two narrow exceptions to the presumption of non-jurisdiction over non-Tribal members. Moreover, no statute specifically grants the Tribal Court jurisdiction here. Specifically, ICWA does not provide Tribal Court jurisdiction over children who are not "in need of care," like NAG. Based on the patent lack of jurisdiction in Tribal Court, plaintiff is not required to exhaust tribal court remedies.

2. Accordingly, plaintiff seeks (1) a declaration that the Tribal Court lacks jurisdiction over all matters involving NAG, and that all orders issued in Case No. 21-0229 are void; (2) a declaration that until further order of this Court the prior status quo governs the relationship of the parties: specifically, the child is returned to and stays with Eric; (3) an immediate preliminary injunction against the KTTT precluding them from exercising exclusive possession over NAG or placing her in foster care; (4) an immediate preliminary injunction against further proceedings in the Tribal Court; and (5) further relief as set forth below.

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Eric Estrada, is a non-Indian individual residing in Maverick County, Texas outside the confines of the Kickapoo Reservation, and the KTTT Tribal Court has no jurisdiction over him.

2. Defendants, the Department of Indian Child Welfare Services and the Kickapoo Traditional Tribe of Texas are a federally recognized Indian Tribe organized under Section 16 of the Indian Reorganization Act of 1934, 25 U.S.C. § 461, *et. seq.* The Kickapoo Traditional Tribe of Texas and the Department of Indian Child Welfare Services are located within this District and the Tribe's principal place of business is located at 2212 Rosita Valley Road, Eagle Pass, Texas 78852 and it can be served with process by serving the Chairman of its Traditional Council, Juan Garza, Jr., Kesiska, at 2212 Rosita Valley Road, Eagle Pass, Texas 78852, or wherever he may be found within Maverick County, Texas.

3. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the question of whether an Indian tribe retains the power to compel non-Indians such as plaintiff to submit to the civil jurisdiction of its tribal court and whether the Tribal Court has jurisdiction over NAG's custody pursuant to ICWA or ICWC is one that "arises under" federal law.

4. Venue is proper under 28 U.S.C. § 1391 because defendant resides in this District and because a substantial part of the events or omissions giving rise to this lawsuit occurred in this District.

## CLAIMS ASSERTED BY PLAINTIFF

**Tribal Court has no jurisdiction over the child or her custodian.**

1. The KTTT relied on Chapter 20, section 20.1(c) of the KTTT Indian Child Welfare Code claiming she was a youth in need of care to forcibly remove NAG from Eric's care. It also relied on ICWA generally. Neither of these sources authorized the KTTT to suddenly snatch the child away from Eric Estrada, her custodian and a non-Tribal member.

2. Absent express authorization by federal statute or treaty, tribal jurisdiction over the conduct of nonmembers exists only in limited circumstances. *Strate v. A-1 Contractors*, 520 U.S. 438, 445, 117 S. Ct. 1404, 1409, 137 L. Ed. 2d 661 (1997). In *Montana v. United States*, 450 U.S. 544, 565 (1981), the Supreme Court explained, "'the inherent sovereign powers of an Indian tribe'—those powers a tribe enjoys apart from express provision by treaty or statute— 'do not extend to the activities of nonmembers of the tribe.'" *Montana* thus described a general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation, subject to two exceptions. *Strate*, 520 U.S. at 446. The first exception relates to nonmembers who enter consensual relationships with the tribe or its members; the second concerns activity that directly affects the tribe's political integrity, economic security, health, or welfare. *Id.*

3. Here, it is clear that KTTT Indian Child Welfare Code section 20.1(c) does not provide jurisdiction over NAG in Tribal Court. The Tribe's actions must be stopped before more harm is caused to the child in addition to the trauma of being forcibly physically removed from the only person she has known as her father. Specifically, under 20.1(c), which the KTTT specifically relied upon, the "jurisdiction of the Tribe over child welfare matters shall extend to all children who are within the jurisdiction of the Court under this code and who reside or are domiciled within the service are of the Tribe…" The KTTT also specified that it had jurisdiction under Chapter 20 of the ICWC because NAG was a "Youth in Need of Care." However, the Code defines that as "A child who has been found to be abandoned, abused, neglected or a juvenile offender." Indian Child Welfare Code Chapter 20 § 20.1(b)(26). Thus, to have jurisdiction over the child and her custody, the KTTT was required to demonstrate that NAG was abandoned, abused, neglected or a juvenile offender. These terms are all defined in the ICWC and clearly do not apply.

4. First, "Abandonment" is defined in the Code as

> The failure of the parent, guardian or custodian to provide reasonable support and to maintain periodic contact with a child. Failure to maintain a normal parental relationship with the child without just cause for a period of six (6) months shall constitute prima facie evidence of abandonment. Custody with extended family members or voluntary consent to placement does not constitute abandonment.

5. *Id.* at § 20.1(b)(1). Under this definition, NAG clearly was not an abandoned child. The KTTT's own code expressly states that 1) custody with extended family members, which Cindy and Eric were, and 2) voluntary consent to placement—which NAG's mother did in giving her to Cindy and Eric—do not constitute abandonment. NAG's situation does not meet any other portion of this definition either, because there is no allegation by anyone that Eric did not provide support and maintain contact with the child. In fact, since Cindy's tragic death he has been NAG's sole caregiver and she considers him her father. That is, until, the KTTT unilaterally decided to remove her from him in July.

6. The ICWC also defines "Abuse" as the "infliction of physical, emotional or mental injury on a child, or sexual abuse or sexual exploitation of a child, including failing to maintain reasonable care and treatment or exploiting or overworking a child to such an extent that his health, moods or emotional well-being is endangered." *Id.* at 20.1(b)(2). Again, there is absolutely no evidence that NAG has suffered abuse by anyone while under the custodianship of Eric, again negating the application of section 20.1(c) of the ICWC and any Tribal jurisdiction.

7. Finally, the word "Neglect" is also defined in the ICWC as:

> The failure of the parent, guardian or custodian to provide adequate food, clothing, shelter, medical care, education or supervision for the child's health and well-being, including the failure of such parent or other custodian to take advantage of reasonably available public assistance and service

> programs designed to furnish such needs where the parent or
> custodian cannot provide such needs on their own. "Neglect"
> shall include "abandonment" of children as defined here.

Id. at §20.1(b)(22). Unquestionably there is no evidence that Eric neglected

NAG whatsoever.

8. Notably, the ICWC refers frequently to a custodian as being equal to a

   parent, and in fact defines "custodian" as "a person other than a parent or

   guardian, who has custody of a minor and who is providing food, shelter

   and supervision to him or her. This is exactly the role that Eric undertook

   when NAG's mother voluntarily placed her with him and Cindy.

9. The Tribe also relies upon the provisions of Indian Child Welfare Act

   ("ICWA") in its efforts to support the claim that the Tribal Court has

   jurisdiction over NAG and by extension, Eric (her lifelong custodian) in the

   custody case in Tribal court, in which the KTTT is seeking to remove NAG

   from Eric and place her with strangers. In its Answers to Eric's Petition in

   Intervention, the KTTT  described the case in Tribal court as a "child

   custody proceeding" involving an Indian Child, citing the Indian Child

   Welfare Act 25 U.S.C. § 1903(4). The KTTT also argued therein that under

   ICWA it had jurisdiction over NAG, and by extension, over Eric and the

   child's biological parents, citing 25 U.S.C. § 1915(b). These arguments

   completely ignore the clear wording of the pertinent provisions of ICWA

   and the case law interpreting it. They also ignore the fact that both of NAG's

biological parents have agreed that NAG should be in the custody and care of Eric, the only person she has ever known as a father.

10. The ICWA does state that an "Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe…" 25 U.S.C. § 1911(a). However, 25 U.S.C. § 1903 defines "child custody proceeding" to mean and include:

    i. "foster care placement" which shall mean any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated;

    ii. "termination of parental rights" which shall mean any action resulting in the termination of the parent-child relationship;

    iii. "preadoptive placement" which shall mean the temporary placement of an Indian child in a foster home or institution after the termination of parental rights, but prior to or in lieu of adoptive placement; and

    iv. "adoptive placement" which shall mean the permanent placement of an Indian child for adoption, including any action resulting in a final decree of adoption.

11. The section continues by adding that"[s]uch term or terms shall not include a placement based…upon an award, in a divorce proceeding, of custody to one of the parents." According to the Court in *In re Larch*, 872 F.2d 66 (4th Cir. 1989), "this statutory exclusion clearly indicates that a state court may lawfully award custody of an Indian child to a non-Indian parent in a divorce proceeding."

12. In that connection, courts have held uniformly that the term "child custody" as used in the provision of ICWA giving tribal court exclusive jurisdiction over certain issues is **strictly interpreted**. *Confederated Tribes of the Colville Reservation v. Superior Court of Okanogan County*, 945 F.2d 1138, 1140 n.3 (9th Cir. 1991). It does not include the resolution of long-term custody disputes between the parents. *Id.; see also In re Larch,* 872 F.2d 66 (4th Cir. 1989) (ICWA definition of child custody does not include an award of custody in divorce proceedings); *DeMent v. Oglala Sioux Tribal Court*, 874 F.2d 510 (8th Cir. 1989) (ICWA not applicable when there was a parental conflict regarding custody of children after divorce); *Cox v. Cox*, 2000 ND 144, 613 N.W.2d 516 (N.D. 2000) (ICWA did not apply to a custody dispute in a divorce action initiated by a Native American mother, even where she wished to have custody so that she could place the child for adoption); *Application of DeFender*, 435 N.W.2d 717 (S.D. 1989) (**ICWA does not cover custody disputes between an Indian child's natural parents; the placement of the child with either of her natural parents did not fit the**

**statutory definition of custody proceeding**)[2]; *In re Custody of Sengstock*, 165 Wis. 2d 86, 477 N.W.2d 310 (Ct. App. 1991) (child custody disputes arising in the context of divorce or separation proceedings are not covered by ICWA); *Starr v. George*, 175 P.3d 50 (Alaska 2008) (ICWA divorce exception excepts from ICWA provisions custody awards to one parent in a divorce proceeding).

13. Additionally, in a similar case before this  Court, *Leija et al v. Kickapoo Traditional Tribe of Texas, et al*, Case No. 2:18-cv-00043-AM this Court  held in an Order granting an Emergency Motion for Temporary Restraining Order and Preliminary Injunction and Request for Entry of Order without Necessity of a Hearing that "the Tribal Court cannot have continuing exclusive jurisdiction over …any matter involving non-Tribal members, or matters which occur off the Reservation, or to any action as between Leija and Jimenez concerning their parental responsibilities and obligations regarding" the children. (Doc. 32) The present situation simply does not fit within the definition of "child custody proceeding" under ICWA. Consequently, the Tribal Court has no jurisdiction.

**Plaintiffs are not required to exhaust Tribal Court remedies.**

---

[2] While Eric is not a biological parent, both of NAG's biological parents have appeared in the tribal court case and agree that Eric should be her custodian, so it is also a custody lawsuit that involves the biological parents of the child, putting it outside of the narrowly defined "child custody" matters within ICWA's purview.

14. This Court can and should grant plaintiffs the declaratory, injunctive and other relief requested in this Complaint without first requiring them to exhaust their remedies in the Tribe's court system with respect to the issue of the Tribal Court's jurisdiction.

15. Exhaustion is not required for several reasons. First, Eric has already attempted to intervene in the Tribal suit, which the KTTT opposes, but has not been able to obtain a ruling.

16. Second, Ivan has made a special appearance (after being left out of the lawsuit against the ICWC's provisions) and requested dismissal for lack of jurisdiction, which the court has not ruled upon.

17. Third, the Tribal Court action is patently violative of express jurisdictional requirements in the Texas Family Code, so exhaustion is not required.

18. Fourth, the KTTT voluntarily manufactured this entire dispute by removing NAG from Eric for no valid reason, despite agreement by the biological parents that Eric should retain custoy of NAG, and then by initiating the so-called custody proceeding in Tribal court. As a result, plaintiff should not be required to exhaust Tribal Remedies because the Tribe voluntarily started this controversy by removing NAG and initiating Tribal court litigation to award custody to strangers.

19. Fifth, the Tribal Court action does not arise out of a transaction, activity, or conduct by plaintiffs that occurred on the Tribe's land.

20. Sixth, the assertion of Tribal Court jurisdiction was made for purposes that bring it within the exceptions to the exhaustion principle. Namely, exhaustion is not required where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction.

21. Seventh, adherence to the exhaustion requirement would serve no purpose other than delay.

22. Eighth, in these circumstances, tribal court exhaustion would not serve, but would violate, the goals of comity and efficiency, and would not tend to serve the overriding goal of the best interests of the children subject of the lawsuits.

**Plaintiff is entitled to an injunction against further proceedings in the Tribal Court and against KTTT or its desired custodians exercising exclusive possession of NAG**

23. KTTT's pursuit of the Tribal Court action, and the Tribal Court's attempt to exercise jurisdiction over the Tribal Court action and plaintiffs, is contrary to federal constitutional requirements, to other state and federal law. Neither Eric, nor Ivan has ever consented to Tribal Court jurisdiction over the custody of NAG.

24. The Tribal Court's exercise of jurisdiction poses an immediate threat of irreparable harm to plaintiff for which no adequate legal remedy exists. The irreparable harm arises from a number of circumstances:

   a. First, plaintiff faces the risk of a judgment by a court that has no jurisdiction over them. At the very least, plaintiff faces the prospect of inconsistent judgments from the Tribal Court and the County Court at Law of Maverick County in the still pending guardianship proceeding, and this Court if an injunction is not issued immediately.

   b. Second, if this Court lets the Tribal Court action proceed, there is a high potential that the County Court at Law guardianship action— an action that has already been pending since April, 2021 will be interfered with by the Tribal Court action. It will also be a clear waste of judicial resources.

   c. Third, a child's life hangs in the balance during this effort by the KTTT to tear NAG away from the only person who she has ever considered to be her father. She has already tragically lost the only person whom she knew as her mother, and this loss is still fresh— only a few months old.  Not immediately enjoining the Tribal court and ordering NAG to be reunited with Eric would just create more delay and substantial uncertainty in NAG's life. She lived with her maternal aunt and uncle since her birth, and then after losing the

only mother she ever knew, she recently was stolen by KTTT and placed with strangers. It is not in the best interest of such a young child, who has already been through so much, to allow the status quo of residing with Eric to be upended for any longer.

d. Finally, there is a great miscarriage of justice and due process for Eric if the Tribal Court continues to interfere with his custodianship and potentially a future guardianship of NAG. There clearly has been no guarantee that Eric can even participate in the Tribal Court litigation as the court has not ruled on his intervention. In fact, the KTTT failed to even make the biological parents of NAG parties to the "custody" proceeding, which is legally required. And both Eric and Ivan are non-Indians over whom the Tribal Court has absolutely no jurisdiction.

25. The irreparable harm to plaintiff and the minor child in the absence of injunctive relief outweighs any hardship to the Tribe if injunctive relief is granted, the Tribal Court proceeding is terminated, and NAG is returned to Eric.

26. The issuance of an injunction against further proceedings in the Tribal Court and enjoining the KTTT and its designated custodians from exercising exclusive possession of NAG will serve the public interest in enforcing the law of Texas regarding the exclusive jurisdiction held and

maintained by state courts over child custody matters for non-Tribal members.

27. Accordingly, plaintiff seeks an immediate preliminary injunction against the KTTT exercising exclusive possession over NAG either on its own or through its chosen custodians, and an immediate preliminary injunction against further proceedings in the Tribal Court.

**Plaintiffs are entitled to declaratory relief determining that the Tribal Court has no jurisdiction.**

28. All prior paragraphs are incorporated by reference.

29. An actual and justiciable controversy currently exists between plaintiff and the Tribe concerning the Tribal Court's jurisdiction over plaintiff, the child and the Tribal Court action. A declaration by this Court as to the Tribal Court's jurisdiction would terminate the controversy giving rise to this cause of action.

30. Based on the allegations above, plaintiff is entitled to a declaration that the Tribal Court lacks jurisdiction over Plaintiff and the Tribal Court action, that all orders issued in Case No. 21-0221 are void; and that until further order of a Texas County Court at Law or District Court, the status quo that existed before the KTTT removed NAG from Eric's custoday governs the relationship of the parties.

WHEREFORE, plaintiffs respectfully seek the following relief:

A. A declaration that the Tribal Court lacks jurisdiction over plaintiff and NAG and that all orders issued in Case No. 21-0221 are void;

B. A declaration that until further order of this Court, the status quo as it existed before NAG was removed from Eric governs the relationship of the parties;

C. An immediate preliminary injunction against KTTT exercising exclusive possession over NAG;

D. An immediate preliminary injunction against further proceedings in the Tribal Court;

E. An award of costs, attorney's fees and other disbursements allowed by law; and

F. Such further relief as the Court deems just and appropriate.

**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 57, PLAINTIFF REQUESTS A SPEEDY HEARING ON HIS REQUEST FOR DECLARATORY RELIEF.**

Dated this 3rd day of October, 2021.

Respectfully submitted,

Elizabeth Conry Davidson
Attorney at Law
State Bar No. 00793586
conry@ecdappeals.com
100 N.E. Loop 410, Suite 615
San Antonio, Texas 78216
Telephone: (210) 380-4899
Facsimile: (210) 568-4036

By: */s/ Elizabeth Conry Davidson*
          Elizabeth Conry Davidson

Attorney for Eric Estrada

GREGORY D. TORRES
ATTORNEY AT LAW, P.L.L.C.
Gregory D. Torres
State Bar No. 00791802
457 Jefferson Street
Eagle Pass, Texas  78852
Telephone: (830) 773-6811
Facsimile: (830) 773-6469
g_torres_law@hotmail.com

Attorney for Eric Estrada

## CERTIFICATE OF SERVICE

I certify that on October 3, 2021, the foregoing document was served pursuant to Federal Rule of Civil Procedure 5(b) upon the following:

J. Trevor Hammons
Felipe Hernandez
Jason Nelson
2212 Rosita Valley Road
Eagle Pass, Texas  78852
Trevorhammons23@gmail.com
Felipe.hernandez@ktttribe.org
 jason.nelson@ktttribe.org

**Attorneys for Kickapoo Traditional Tribe of Texas**

Richard Crow
Crow Law Firm, PLLC
11610 Vance Jackson, No. 518
San Antonio, Texas  78230
rick@crowlawtexas.com

**Attorney ad Litem for NAG**

Cesar Lozano
Law Office of Cesar R. Lozano, Jr.
1884 E. Main Street, Suite 1
Eagle Pass, Texas 78852
Cesar.lozano.45@outlook.com

**Attorney for Tavanay Cirus Garza**

F. Gail Schroeter
Schroeter Firm
403 W. Cantu Road
Del Rio, TX 78840
schroeterefile@gmail.com

**Attorney for Ivan Torres**

 */s/Elizabeth Conry Davidson*
Elizabeth Conry Davidson
Gregory Torres

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

ERIK ESTRADA                                    )
                                                )
          Plaintiff,                            )
                                                )
V.                                              )     CASE NO. 5:21-cv-00942
                                                )
KICKAPOO TRADITIONAL TRIBE                      )
OF TEXAS and DEPARTMENT OF                      )
INDIAN CHILD WELFARE SERVICES                   )
                                                )
          Defendant.                            )

UNSWORN DECLARATION OF ERIK ESTRADA

1.      "My name is Erik Estrada. I am over eighteen (18) years of age, reside in Eagle
Pass, Maverick County, Texas and I am fully competent to make this Affidavit. I have
personal knowledge of the facts stated herein and they are all true and correct. I have
personal knowledge of the proceedings to date in the case numbered 21-0229 pending in
the Tribal District Court of the Kickapoo Traditional Tribe of Texas Reservation.

2.      On February 2, 2020 NAG was born to my wife's sister, Tavanay Cirus Garza. Four
days after the birth, Tavanay came to the residence where my wife Cindy Trevino Salazar
and I lived with Cindy's three sons: TF, LF and JS. Tavanay said she was leaving the child
with us so that we could adopt her. She left NAG with us without any clothing, diapers,
milk, blankets, baby carrier, car seat or crib. Tavanay did not tell us or did not know the
identity of the father. From the day Tavanay left NAG with Cindy and me, we felt the
full responsibility to take care of her and provide everything she needed. I took her to all
of her immunizations, checkups and other regular doctor visits. I always made sure she
was happy and healthy. I have always been there for her since day one. I taught her first
words, and heard her say "mom" and "dad "for the first time. To NAG, Cindy was her
mother and I am her father. I would even say that she was a "daddy's girl."

3.      While Cindy would attend tribal religious ceremonies, I would care for NAG.
NAG was very fond of me and of Cindy's three sons, who she considered her brothers.
NAG spent a lot of time with her brothers and they always got along and had fun
together. In April of this year, Cindy began a guardianship proceeding to be appointed
NAG's permanent guardian. However, the proceedings were not completed before
Cindy was incarcerated and then tragically died a few months ago. Beginning in June,
2021 I was required to take full responsibility of NAG alone. I had no help from any



EXHIBIT A

family member or friend. Because of my wife's incarceration there was no longer any monetary assistance from the Tribe. But I still took care of her and she had no need for anything that I didn't provide.

4.      As I am not a member of the KTTT and I was not living on the reservation, it never ever occurred to me that the Tribe, would decide to intervene and take NAG away from me. Suddenly in July the Tribe's Department of Indian Child Welfare Services pretended it did not know who was caring for NAG subsequent to Cindy's death—although she had lived with us since she was born. After hearing that ICWS wanted to do a welfare check on NAG I contacted them and stated they could check on July 28, 2021. They lied to me, and instead of conducting a welfare check they showed up and told me that because I had no legal paperwork regarding NAG, that they were going to forcibly remove her from my custody. I was angry because they took her from me and stated she would be taken to the KTTT Foster Group Home, where she knows nobody. NAG's brother TF came out of the house and confronted ICWS staff and then an ICWS worker simply grabbed NAG and left the premises immediately.

5.      This event was extremely upsetting to me, NAG's brothers and, of course to her herself. She was only a year and a half old when this horrible event occurred and the ICWS had absolutely no justification for removing her from my custody. They claim that she was a "youth in need of care" but this is false. NAG had not been abandoned, abused, or neglected by me as defined in the Indian Child Welfare Code, whatsoever.

6.      Later in the day after NAG was forcibly removed from my custody, I went to the Foster Home to see her, I was told by Sydney Sanchez the ICWS staff member who came to my home under the pretense of a welfare check and stole NAG from me that I was not allowed to see NAG because Sanchez was not at the Foster Home. According to her the staff could not open the door or answer any of my questions and that I could only have supervised visits with my daughter. I was also told I could not come to the Foster Home unannounced and was told Sanchez would return at 4:30 p.m. Finally, that afternoon I was able to briefly see NAG. That was the last time I was allowed to see NAG; the Tribe has forbidden me from having any contact with her whatsoever.

7.      Since that time, the KTTT has placed all of Cindy's children and NAG in foster care with distant biological relatives of Cindy's: Leroy Salazar and Ana Lee Garza. NAG had never even met these two people and they hadn't taken care of her a day in her life before this nightmare began. I am heartbroken and I know that NAG is as well. I have been prevented from spending much time with her since the Tribe took her from me but what I have seen and heard from those who have seen her is that NAG is despondent, lost, and unhappy. All the pictures I have seen of her on social media look very sad. I know that she does not know her foster parents, and she is miserable.


EXHIBIT A

8.      I have spoken with NAG's biological mother, Tavanay Cirus Garza since NAG was taken from me and her preference is for NAG to be returned to me because she has been with me since birth.

9.      I have also spoken with NAG's biological  father, Ivan Torres, Jr., who did not know until the ICWS became involved that he was even the father of a child with Tavanay. Ivan has also told me that his preference is for NAG to be returned to me because she has been with me since birth.

10.      I have bought a new home and it is nice and roomy and has plenty of space for NAG to live with me. I have bought everything that she needs to be happy. I have spent my own money taking care of her since the Tribal funds were terminated many months ago and since Cindy passed away in July. I have the means and ability and the desire to continue caring for NAG and it is just heartbreaking that the Tribe has intervened in a good father daughter relationship—with a child of less than two years old—and attempted to destroy it.

10.      A hearing is scheduled for Tribal court on October 5, 2021 at 11:00 a.m. At this hearing the court may further make orders that are damaging to myself and to NAG. I believe that this situation is causing immediate and irreparable harm to the child, NAG and further emotional and mental and possibly physical damage will occur if the ICWS/KTTT is not immediately ordered, without need for a hearing, to 1) return NAG to me and 2) halt all proceedings in the Tribal court and vacate its orders. I believe this Court should issue a Temporary Restraining Order to protect NAG from imminent physical and emotional harm.

My name is Erik Estrada. My date of birth is May 16, 1982 and my address is 2220 Malibu Boulevard, Eagle Pass, Texas  78852 and I declare under penalty of perjury that the foregoing is true and correct.

"FURTHER AFFIANT SAYETH NOT."

Executed on October 4, 2021 in Eagle Pass, Texas.

_____
     Erik Estrada, Declarant

EXHIBIT A